IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

UNITED STATES OF AMERICA,

v.                                                             Criminal No. 3:20cr66 (DJN)

MITCHELL WASHINGTON,
        Defendant.

**MEMORANDUM OPINION**

This matter comes before the Court on Defendant Mitchell Washington's Motion for Compassionate Release. (ECF Nos. 28, 33.)[1] Washington seeks a reduction in his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), based on the alleged "72-month disparity between his current sentence and his advisory guideline range, if he were sentenced today." (Motion or Mot. (ECF No. 33) at 1.) Further, Washington asserts that his pre-existing medical conditions combined with the risk of severe illness or death posed by the ongoing Coronavirus Disease 2019 Pandemic ("COVID-19") amount to an extraordinary and compelling reason why the Court should reduce his sentence. (*Id.*) The Government opposes Washington's Motion. (Government's Response in Opposition ("Resp.") (ECF No. 40).)

---

[1]     On May 31, 2022, Washington filed a *pro se* Motion for Compassionate Release. (ECF No. 28.) The following day, the Court appointed Counsel to represent Washington, directed Counsel to file a Motion on Washington's behalf and set a briefing schedule. (ECF No. 29.) After seeking one extension of time, Counsel filed a Motion for Compassionate Release on Washington's behalf on July 29, 2022. (ECF No. 33.) Accordingly, the July 29, 2022 Motion became the operative Motion at issue in this case, and the Court hereby DENIES Washington's original *pro se* Motion for the reasons stated herein and as otherwise MOOT. (ECF No. 28.)

This case presents the Court with a now increasingly familiar quandary: When and why does a non-retroactive change (or potential change) to the law amount to an extraordinary and compelling reason for sentencing relief?[2] Upon due consideration, the Court finds that a significant disparity exists between Washington's sentence and the sentence he would receive if sentenced today, but that the 18 U.S.C. 3553(a) factors do not support any reduction to his sentence at this time. Accordingly, for the reasons set forth below, the Court hereby DENIES Washington's Motion. (ECF Nos. 28, 33.)

## I. BACKGROUND

### A. Defendant's Underlying Offense

On November 21 and 27, 2019, respectively, Washington sold drugs to a confidential source in exchange for money provided by Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Agents. (Presentence Investigation Report ("PSR") (ECF No. 19) ¶ 7; Resp. at 2.) On June 17, 2020, a federal grand jury indicted Washington on two counts of distribution of heroin and fentanyl. (ECF No. 13.)

### B. Procedural History

On June 29, 2020, Washington pleaded guilty, without a plea agreement, to both counts in the Indictment. (ECF No. 15.) Washington adopted the Statement of Facts during both his plea and a subsequent interview with the United States Probation Officer preparing his PSR.

---

[2] The Court notes that forthcoming amendments to the Sentencing Guidelines, which will likely become effective in November 2023, "operate together to respond to a circuit split concerning when, if ever, non-retroactive changes in law may be considered as extraordinary and compelling reasons within the meaning of section 3582(c)(1)(A)" by explicitly "permit[ing] non-retroactive changes in law (other than non-retroactive amendments to the Guidelines Manual) to be considered extraordinary and compelling reasons warranting a sentence reduction, but only in narrowly circumscribed circumstances."

2

(*Id.*; PSR ¶ 12.) During his sentencing, the Court calculated Washington's sentencing guideline range as 151 to 188 months. Specifically, the Court calculated Washington's total offense level as 29, after determining that Washington was a career offender under U.S.S.G. § 4B1.1(a) and then applying a three-point reduction for Washington's timely acceptance of responsibility. Due to his decades-long criminal history and the fact that Washington committed "the instant offense while under a criminal justice sentence," Washington's final criminal history category was VI.[3]

Noting the role that Washington's own substance abuse has played in his criminal history, including the instant offenses, the Court granted Washington's downward variance and sentenced him to ninety-six months' imprisonment with credit for time served. The Court also recommended that Washington participate in much needed substance abuse treatment.

As of this Opinion, Washington is serving his sentence at Federal Correction Institute Hazelton ("FCI Hazelton"), a medium security facility in West Virginia. His projected date of release is February 4, 2027.

### C. Defendant's Motion for Compassionate Release

Defendant's Motion presents two central arguments. First, he asserts that his Virginia convictions for Robbery and Possession with Intent to Distribute are no longer predicate offenses for the Career Offender enhancement under U.S.S.G. § 4B1.1(a) and thus that his sentence is now significantly longer than it would be if the Court sentenced him today. Second, Defendant argues that his pre-exiting conditions render him particularly susceptible to serious illness or death from Coronavirus Disease 2019 ("COVID-19").

---

[3] The Court notes that Washington's Criminal History Category of VI would have remained unchanged regardless of whether the Court deemed him a career offender. (PSR ¶¶ 52–55.) Likewise, although forthcoming amendments to the Sentencing Manual revise the application of so-called "status points" under U.S.S.G. 4A1.1(d), Washington's Criminal History Score of 16 placed him in Category VI with or without any status points.

3

The Government opposes the Motion and asserts that Washington failed to exhaust his claims with the Warden of his facility before seeking compassionate release from the Court as required by § 3582(c)(1)(A). Furthermore, the Government contends that Washington has not established an extraordinary and compelling reason warranting relief and that the 18 USC § 3553(a) factors do not support any reduction in his sentence.

As set forth below, the Court finds that Washington's Motion is properly before the Court. The Court further finds, however, that Washington has failed to meet the bar for compassionate release, and for the foregoing reasons DENIES his Motion.

## II. APPLICABLE LAW

The compassionate release statute begins with the default position that the Court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Congress created a few exceptions to the default position, however, including where "extraordinary and compelling reasons warrant" a reduction of a defendant's sentence. *Id.* § 3582(c)(1)(A)(i). Although the law originally permitted only the Director of the Bureau of Prisons ("BOP") to move for compassionate release on a defendant's behalf, the First Step Act of 2018 broadened § 3582(c) by allowing a federal inmate to directly move for compassionate release on his own behalf after first filing a compassionate release request with the warden of his facility. Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (2018).

Under § 3582(c)(1)(A), a court may not grant a defendant's motion unless the reduction is (1) at the outset, warranted by "extraordinary and compelling reasons," (2) "consistent with the 'applicable policy statements issued by the Sentencing Commission'" and (3) consistent with "any applicable § 3553(a) factors." *United States v. Jenkins*, 22 F.4th 162, 169 (4th Cir. 2021) (quoting *United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021)).

First, to find "extraordinary and compelling reasons," the Fourth Circuit has held that a district court's inquiry "must take into account the totality of the relevant circumstances." *United States v. Hargrove*, 30 F.4th 189, 198 (4th Cir. 2022).

Second, the Fourth Circuit has recognized that "[w]hen a defendant exercises his . . . right to move for compassionate release on his own behalf," the "consistency requirement does not constrain the discretion of district courts." *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020). Thus, although "[a] sentence reduction must conform to any and all policy statements that apply," "where the [Sentencing] Commission fails to act . . . *courts* make their own independent determinations of what constitutes an 'extraordinary and compelling reason' . . . as consistent with the statutory language, which 'directly instructs courts to find that extraordinary circumstances exist.'" *Id.* at 284 (quoting *United States v. Rodriguez*, 451 F. Supp. 3d 392, 400 (E.D. Pa. 2020)) (emphasis in original). Currently, no policy statement binds district courts faced with a defendant's motion for compassionate release, but the Sentencing Guidelines commentary and relevant BOP guidance "remains helpful" in defining extraordinary and compelling circumstances. *Hargrove*, 30 F.4th at 197 (quoting *McCoy*, 981 F.3d at 282 n.7).

Finally, regarding the third prong, a defendant's demonstration of "extraordinary and compelling reasons" merely renders him "*eligible* for relief." *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021) (emphasis in original). The Court thus retains its discretion to deny the motion after considering the § 3553(a) factors. *Id.* Here, while Defendant demonstrates an extraordinary and compelling reason, the § 3553(a) factors weigh against his early release.

### III. DISCUSSION

The Government first asserts that Washington failed to exhaust his claims with the Warden of his facility before seeking compassionate release from the Court as required by

5

§ 3582(c)(1)(A). Further, the Government contends that Washington has not established an extraordinary and compelling reason warranting relief and that the 18 USC § 3553(a) do not support any reduction in his sentence.

### A. Washington Has Satisfied the Statutory Threshold Requirement for Filing a Motion for Compassionate Release with the Court

Pursuant to 18 U.S.C. § 3582(c)(1)(A), a district court may reduce a defendant's sentence

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.

18 U.S.C. § 3582(c)(1)(A). Thus, "[t]he text of § 3582(c)(1)(A) plainly provides that a defendant may file a motion on his own behalf 30 days after the warden receives his request, regardless of whether the defendant exhausted his administrative remedies." *United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021). Washington filed a request for relief with the warden of his facility on March 18, 2021. (Mot. at 3.) The warden denied that request on April 16, 2021. (Mot. at 3; *see also* Warden's Response (ECF No. 33-1).) Washington's *pro se* motion for compassionate release, filed on May 31, 2022, (*see supra* note 1), clearly satisfies the threshold requirement of § 3582(c)(1)(A).

Nevertheless, the Government argues that Washington's Motion is not properly before the Court. The Government cites *United States v. Ferguson*, 2021 WL 1701918 (E.D. Va. Apr. 29, 2021), for the proposition that "a defendant must present the same claims in support of compassionate release to BOP that he presents to the Court." (Resp. at 6–7.) However, the Fourth Circuit has now explicitly rejected this argument. *See United States v. Ferguson*, 55 F.4th 262, 269 (4th Cir. 2022) (holding that "§ 3582(c)(1)(A) does not require issue exhaustion"). Accordingly, the Government's position lacks merit, and the Court finds that

6

Washington properly satisfied "the threshold requirement of § 3582(c)(1)(A) by filing a request with the warden of his facility and thereafter waiting thirty days before seeking relief through the Court." *Id.* at 268.

### B. Washington Demonstrates that Extraordinary and Compelling Reasons Entitle Him to Compassionate Release

#### 1. Washington's Risk of Contracting COVID-19 Is Neither Extraordinary Nor Compelling

The Court begins with analyzing Defendant's COVID-19 arguments. To establish that COVID-19 constitutes an extraordinary and compelling reason for his compassionate release, a defendant must allege that "the risk of contracting COVID-19 in a prison is higher than the risk outside the prison and that [Defendant's] preexisting medical condition[s] increase[] [his] risk of experiencing a serious, or even fatal, case of COVID-19." *High*, 997 F.3d at 185. In other words, a defendant must demonstrate "both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Smith*, 2021 WL 5579187, at *1 (4th Cir. Nov. 30, 2021) (citing *United States v. Feiling*, 453 F. Supp. 3d 832, 841 (E.D. Va. 2020)). "[A] general fear of contracting COVID-19, without a sufficient basis for that fear, does not provide an extraordinary and compelling reason for a defendant's release." *United States v. Chandler*, 2020 WL 6139945, at *5 (E.D. Va. Oct. 19, 2020) (citing *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)).

##### i. Washington Fails to Establish a Particularized Susceptibility to COVID-19

The Court's inquiry into whether a defendant has a particularized susceptibility to COVID-19 "is multifaceted and must take into account the totality of the relevant circumstances." *Hargrove*, 30 F.4th at 198. One factor often considered by courts is whether the Centers for Disease Control and Prevention ("CDC") identifies a defendant's medical conditions

7

as those that may increase an individual's susceptibility to a severe COVID-19 outcome. *Id.* at 196. Upon review of the applicable CDC guidance, Defendant's motion and Defendant's medical records, the Court finds that Defendant does not demonstrate a particularized susceptibility to severe illness or death from COVID-19.

Defendant argues that his medical conditions, primarily hypertension (high blood pressure) and prediabetes, constitute underlying conditions that make him more susceptible to a heightened risk of severe illness or death from COVID-19. (Mot. at 10.) The Court addresses each condition in turn.

Defendant points to credible research indicating that individuals with hypertension face heightened risk for severe illness from COVID-19, *id.*, and the Government acknowledges that the CDC has reached the same conclusion. (Resp. at 22.) While the Court takes note of these medical findings, the facts here align with those at issue in another case in which this Court found no "particularized susceptibility" to COVID-19 severe illness. *See United States v. Smith*, 2021 WL 3641463, at *3 (E.D. Va. Aug. 17, 2021) (Payne, J.) (finding that where an incarcerated defendant suffering from hypertension had received full vaccination against COVID-19, the vaccine's effectiveness meant that "the defendant must provide other evidence to establish an extraordinary and compelling reason for compassionate release based upon his concern about contracting the virus"); *see also* Ctrs. for Disease Control & Prevention, *Monitoring COVID-19 Cases, Hospitalizations, and Deaths by Vaccination Status* ("COVID-19 vaccines help protect against severe illness, hospitalization, and death. People who are up to date on COVID-19 vaccines are much less likely to experience severe symptoms than people who are not up to date, if they get infected with SARS-CoV-2, the virus that causes COVID-19.").[4] Here,

---

[4]  Available at https://perma.cc/2U2T-QABL (last visited July 14, 2023).

as with *Smith*, Defendant suffers from hypertension but has received a full dosage of the Moderna vaccine. (ECF No. 39 at 25.) And though Defendant cites to several cases in which courts have granted compassionate release to inmates with hypertension and/or diabetes, those cases fail to dislodge the salience of Defendant's vaccination status, as the decisions that Defendant cites predate the rollout of the COVID-19 vaccines. (Mot. at 13; citing *United States v. Salvagno*, 2020 WL 3410601 at *12 (N.D.N.Y. Jun. 22, 2020), *reconsideration denied*, No. 5:02-CR-51, June 22, 2020); *United States v. Readus*, 2020 WL 2572280, at *3 (E.D. Mich. May 21, 2020)).

As to the other primary medical condition Defendant cites — prediabetes — the CDC does not consider individuals with prediabetes to be at higher risk of severe illness from COVID-19. Ctrs. for Disease Control & Prevention, *People With Certain Medical Conditions*.[5] Applying *Hargrove*, 30 F.4th at 196, this Court gives weight to the CDC's findings on this point. Thus, Defendant fails to establish that he has a particularized susceptibility to severe illness from COVID-19. Further, even if the Court were to assume that Defendant's medical conditions markedly increase his susceptibility to contracting a severe case of COVID-19, Defendant fails to demonstrate a heightened risk of contracting COVID-19 in BOP custody at his current facility.

        ii.    <u>Even if Washington's Medical Conditions Increase His Susceptibility to a Severe Case of COVID-19, Washington Does Not Face a Particularized Risk of Contracting COVID-19 At This Time</u>

Defendant fails to plausibly allege that he faces a particularized risk of contracting COVID-19 at this time, especially given the low infection rate and high vaccination rate at his current facility. (Resp. at 24.). Defendant cites nationwide statistics from the pandemic,

---

[5]     Available at https://perma.cc/C3WR-PVCE (last visited July 13, 2023).

9

including that as of the filing of his Motion, "[a]t least 247 federal inmates have died from COVD-19" and a study calculating that COVID-19 rates are substantially higher within BOP than in the U.S. adult population, along with the fact that FCI Hazelton (Defendant's current facility) had reported two inmate deaths from the virus as of the time of his Motion's filing. (Mot. at 14.) But as the Government points out, the particularized-risk prong requires Defendant to present "evidence of an actual outbreak in his facility, not simply the mere possibility of COVID-19 spreading to his camp." (Resp. at 23, citing *United States v. Little*, 2020 WL 3442173, at *2 (E.D.Va. June 23, 2020).) As of August 31, 2023, FCI Hazelton has zero reported open cases of COVID-19,[6] out of an inmate population of 1,675.[7]

Moreover, FCI Hazelton has high vaccination rates among inmates and staff. (Resp. at 5); *see also United States v. Norman*, 2021 WL 5003243, at *5 (E.D. Va. Oct. 28, 2021) (finding an absence of "particularized risk" based on a facility's "availability of vaccines and the low number of positive cases there currently"). Accordingly, Defendant has not demonstrated a particularized risk of contracting COVID-19 at this time, especially when considering COVID-19 statistics that this Court has previously found to not present a particularized risk. *See, e.g., United States v. Woolridge*, 2021 WL 415131, at *5 (E.D. Va. Feb. 5, 2021) (finding no particularized risk where there were only eight active cases of COVID-19 among an inmate population of 1,404).

Defendant's generalized fear of contracting COVID-19 does not amount to an extraordinary and compelling reason for release.

---

[6]  *Inmate COVID-19 Data*, BOP, available at https://perma.cc/9FX8-FWSF (last visited August 31, 2023).
[7]  *Population Statistics*, BOP, available at https://perma.cc/U997-MT6J (last visited August 31, 2023).

### 2. The Alleged Sentencing Disparity Constitutes Extraordinary and Compelling Reasons

As noted above, the Court engages in a totality-of-the-circumstances analysis to find "extraordinary and compelling reasons." *Hargrove*, 30 F.4th at 198. The Court thus turns to Defendant's other argument for this factor: a sentencing disparity.

Defendant presents meritorious arguments regarding the disparity between what his sentence would be today and the sentence that he received in 2020, based on changes to career offender enhancement calculations. The Guidelines provide for a career offender enhancement when a defendant is (1) at least 18 years old at the time of the offense; (2) the offense qualifies as a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. U.S.S.G. § 4B1.1(a). Here, Defendant received a career offender enhancement, PSR ¶ 22, and subsequently received a base offense level of 32 and final Offense Level of 29 and Criminal History Category VI assessment. (Mot. at 4.) The PSR determination arose from predicate offenses of Robbery and Possession with Intent to Manufacture/Sell Schedule I, II Drugs ("Possession with Intent"). (Mot. at 4, citing PSR. ¶¶ 40, 48.) Defendant argues that if sentenced today, he would not be a career offender, and that this sentencing disparity constitutes an "extraordinary and compelling reason" for the Court to grant his Motion. (Mot. at 3–4.) The Court addresses each relevant offense in turn.

i. <u>Possession with intent to manufacture or sell schedule I/II drugs</u>

Regarding Defendant's prior conviction for Possession with Intent, Defendant points to *United States v. Campbell*, 22 F.4th 438 (4th Cir. 2022), which held that the Sentencing Commission's commentary regarding the Sentencing Guidelines' definition of "controlled

11

substance offense" was plainly inconsistent with the Guidelines and therefore was invalid. (Mot. at 4-5.) In *Campbell*, the Fourth Circuit reviewed the sentencing of a defendant for a West Virginia conviction for delivery of crack cocaine that the district court held qualified as a "controlled substance offense" under U.S.S.G. § 4B1.2. *Campbell*, 22 F.4th at 440-41. Analyzing the West Virginia statute at issue, the Fourth Circuit held that because the statute included *both* attempted and completed deliveries of a controlled substance, an attempted delivery qualified as the "least culpable conduct." *Id.* at 441–42. Next, assessing the Sentencing Commission's commentary that the inchoate offense of *attempting* to commit an offense related to controlled substances counted as a "controlled substance offense," the Fourth Circuit found that the Commission's commentary plainly clashed with the Guidelines' definition of "controlled substance offense" that only included completed, rather than attempted, offenses. *Id.* at 444–47. Because the U.S.S.G. § 4B1.2(b)'s plain text contradicted the commentary, the text governed, and therefore *Campbell* held that "controlled substance offenses" do not extend to attempt offenses. *Id.* And as the relevant West Virginia statute covered attempted deliveries as the "least culpable conduct," the Fourth Circuit held that the defendant's conviction under the statute could not qualify as a "controlled substance offense" under the Sentencing Guidelines. *Id.* at 444.

Here, Defendant compares the West Virginia statute at issue in *Campbell* with Va. Code § 18.2-248, the Virginia statute under which Defendant was convicted of Possession with Intent, arguing that because that statute covers *attempted* transfers of controlled substances, that law is analogous to West Virginia's provision. (Mot. at 5–7.) Defendant argues that his conviction for violating the Virginia statute therefore does not count as a "controlled substance offense" under U.S.S.G. § 4B1.2, and thus that *Campbell* means that he should not have received a career offender enhancement level based on that conviction. *Id.*

12

However, in multiple recent opinions, this Court considered and rejected the same argument. *See United States v. Towles*, 2023 WL 5246320, at *2 (E.D. Va. Aug. 15, 2023) (describing *Campbell* as an "outlier" in light of subsequent Fourth Circuit opinions); *see also United States v. Brown*, 2023 WL 4138244, at *5 (E.D. Va. June 22, 2023) (finding that Va. Code § 18.2-248 qualified as a "controlled substance offense"). In *Towles*, this Court highlighted the Fourth Circuit's holding in *United States v. Ward*, 972 F.3d 364, 374 (4th Cir. 2020) that a conviction under Va. Code § 18.2-248 constitutes a controlled substance offense under the Sentencing Guidelines. *Towles*, 2023 WL 5246320, at *4. While *Campbell* followed less than two years later with an apparently contrary conclusion, this Court noted in *Towles* that "in a trio of recent decisions, the Fourth Circuit has offered some clarification on this discrepancy, suggesting that *Ward* remains valid precedent and *Campbell* can only be viewed as an aberration." *Id.*; *see United States v. Groves*, 65 F.4th 166 (4th Cir. 2023) (analyzing the federal drug statute), *United States v. Miller*, 75 F.4th 215 (4th Cir. 2023) (analyzing the North Carolina state drug statute), and *United States v. Davis*, 75 F.4th 428 (4th Cir. 2023) (analyzing the South Carolina state drug statute). Accordingly, Defendant's prior conviction for violating Va. Code § 18.2-248 qualifies as a "controlled substance offense" under U.S.S.G. § 4B1.2.

      i.    <u>Robbery</u>

As to Robbery, however, Defendant has the winning argument. Defendant highlights the Fourth Circuit's holding in 2022 that because a conviction for robbery in Virginia can be committed without proving as an element the "use, attempted use, or threatened use of physical force," Virginia Robbery does not qualify as a predicate offense under the Armed Career Criminal Act ("ACCA"). (Mot. at 4, citing *United States v. White*, 24 F.4th 378, 381 (4th Cir. 2022).) Defendant asserts that because U.S.S.G. § 4B1.1 uses the same analysis as under the

ACCA's "violent felony" definition to determine if a predicate offense qualifies as a "crime of violence" for career offender enhancement calculations, Virginia Robbery no longer counts as a predicate offense for being a career offender. (Mot. at 4.)

In response, the Government argues that the Court correctly sentenced Defendant as a career offender, as the Virginia statutory provision under which Defendant was convicted of robbery is Va. Code § 18.2-58, drawing attention to the Fourth Circuit's conclusion that "'Section 18.2-58 does not define the common law crime of robbery, but rather fixes the punishment applicable to certain means of commission of robbery.'" (Resp. at 11) (citing *White*, 987 F.3d at 341). In the Government's view, because "§ 18.2-58 applies only to certain means of committing Virginia robbery," and because *White* dealt with the broader question of whether an individual could be convicted of *common-law* robbery by means of nonviolent conduct, *White* does not exclude § 18.2-58 offenses from the ACCA's elements clause of what constitutes a predicate offense. (Resp. at 12.)

In the time since Defendant and the Government filed their briefs on this issue, however, the Fourth Circuit issued an opinion concluding that § 18.2-58 — in the form that applied to the defendant in both that case as well as the instant case — cannot count as a violent felony for ACCA predicate offense purposes. *United States v. Williams*, 64 F.4th 149, 156 (4th Cir. 2023). In *Williams*, the Fourth Circuit vacated an opinion from a court in this District that denied an inmate's 18 U.S.C. § 2255 motion challenging the sentencing court's application of the ACCA enhancement based on the defendant's prior Virginia robbery convictions under Va. Code § 18.2-58. *Williams*, 64 F.4th at 150. Noting that the defendants in both *Williams* and *White* "were convicted under the same version of the robbery statute," the Fourth Circuit held that the Virginia Supreme Court's conclusion in *White* that Virginia common-law robbery did not require

14

"physical force" therefore "applie[d] with equal force" to *Williams*. *Id.* at 153. Accordingly, the Fourth Circuit concluded that the defendant's "robbery convictions did not categorically require 'as an element the use, attempted use, or threatened use of physical force against the person of another,'" and therefore did not qualify as ACCA violent felonies. *Id.* at 156.

As this Court has acknowledged in the aftermath of *Williams*, robbery under Va. Code § 18.2-58 "can no longer serve as a valid predicate crime of violence for the purposes of the ACCA." *United States v. Woody*, 2023 WL 4827073, at *3 (E.D. Va. July 27, 2023) (Hudson, J.) (granting a § 2255 motion and vacating defendant's prior sentence that had included an enhancement for § 18.2-58 robbery convictions). Because Defendant's robbery conviction would not count as a predicate offense for sentencing enhancement purposes today, Defendant would only have one predicate offense and therefore would not qualify as a career offender if sentenced today. U.S.S.G. § 4B1.1(a). And as Defendant highlights, multiple district court opinions from within the Fourth Circuit have deemed a sentencing disparity due to changes in the applicability of the career offender enhancement to constitute an extraordinary and compelling reason for a sentence reduction under § 3582(c)(1)(A). (Mot. at 8, citing *United States v. Banks*, 2022 WL 220638 (W.D. Va. Jan. 25, 2022) (granting § 3582(c)(1)(A) compassionate release to defendant who would not be career offender if sentenced today) and *United States v. Trice*, 2021 WL 402462, at *3 (W.D. Va. Feb. 3, 2021) (same).)

Here, in the absence of the career offender enhancement, Defendant's Total Offense Level would have been 10, and his guidelines sentencing range would have been twenty-four to thirty months. (PSR. ¶¶ 15, 95.) An "enormous disparity" between the sentence Defendant received and the sentence he would receive today can support a finding that "extraordinary and compelling" reasons exist for § 3582(c)(1)(A) relief. *McCoy*, 981 F.3d at 285. The Court

concludes that the seventy-two-month disparity between Defendant's current sentence and the applicable guidelines range if the Court sentenced him today constitutes an "extraordinary and compelling" reason for § 3582(c)(1)(A) relief, particularly given that Defendant has already served forty-one months of his current sentence, i.e., more than the proper range would be.

### C. The § 3553(a) Factors Do Not Support Washington's Release

The Court's inquiry, however, does not stop with the finding that "extraordinary and compelling" reasons exist for § 3582(c)(1)(A) relief. Instead, this Court "must consider the 3553(a) sentencing factors to the extent that they are applicable in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment." *High*, 997 F.3d at 186 (cleaned up). Those factors include the nature and circumstances of the underlying offense and the history and characteristics of the defendant, as well as the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct and protect the public from further crimes. 18 U.S.C. § 3553(a)(1)–(2).

As most relevant here, the Court finds that Defendant's significant criminal history and the need to promote respect for the law weigh against his release. Beginning at age 14 and extending to the time that he committed the offense here while under a criminal justice sentence, Defendant accrued a lengthy criminal history. (Resp. at 26.) Indeed, in addition to two juvenile adjudications, Defendant's prior criminal convictions include: robbery, driving under a suspended license, grand larceny, resisting arrest, failure to appear, brandishing a firearm, trespassing, shoplifting, possession of heroin and possession of cocaine, among other violations. (PSR ¶¶ 27–51.) And as noted, Washington's Criminal History Category of VI would have remained unchanged regardless of whether the Court deemed him a career offender. (PSR

16

¶¶ 52–55.) Defendant was also forty-five years old at the time of the instant offense. The Court finds that Defendant's substantial criminal history and the need to promote respect for the law, as well as protecting the public from future crimes by Defendant, weigh heavily against granting relief under § 3582(c)(1)(A).

Turning to Defendant's post-sentencing conduct, Defendant argues that he is rehabilitated, as demonstrated by his good conduct throughout his incarceration. (Mot. at 16.) In support, Defendant describes his family support, proffers a loose release plan and disavows his past behavior. (Mot. at 16–17.) Based on his post-sentencing conduct, Defendant contends that his time served thus far suffices to accomplish the goals of sentencing. (Mot. at 17.) The Court disagrees. While the Court commends Defendant for his rehabilitative efforts, including his participation in drug education programs and his good behavior while in BOP custody, the Court finds that the seriousness of Defendant's criminal history evinces a record of disrespect for the law. In light of that history, the Court finds that the period of incarceration that Defendant has served to date is insufficient to accomplish the goals of sentencing. Defendant's modest rehabilitative efforts do not convince this Court that Defendant poses a reduced danger to himself or his community. Accordingly, the Court finds that the § 3553(a) factors support neither his release nor any reduction of his sentence.

Finally, the Court notes Defendant's argument that he has served a sufficient sentence to date, pursuant to the § 3553(a) requirement of a sentence "sufficient, but not greater than necessary," because he has now served more time than his guidelines range would have been if he had been sentenced today. (Mot. at 16.) However, a Guidelines reduction, standing alone, does not provide an independent basis for relief under § 3582(c)(1)(A). *See, e.g., United States v. Dodson*, 2020 WL 6323721, at *5 (E.D. Va. Oct. 28, 2020) (holding that while the Court

17

considers a "guideline reduction in the overall § 3553(a) analysis, this compassionate release motion does not provide the Court with the appropriate vehicle to entertain such relief on an independent basis").

## IV. CONCLUSION

For the reasons set forth above, the Court will DENY Defendant's Motion for Compassionate Release. (ECF No. 33.)

An appropriate Order shall issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

/s/
David J. Novak
United States District Judge

Richmond, Virginia
Dated: September 22, 2023